UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Byron Kenneth Anderson,

                Petitioner,

     vs.

Tim Pawlenty, as Governor of the
State of Minnesota; Cal Ludeman,
as Commissioner of the Minnesota
Department of Human Services; and
the State of Minnesota,

                Respondents.           Civ. No. 09-1011 (DWF/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.   Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, pursuant to Title

28 U.S.C. §2254.

The Petitioner Byron Kenneth Anderson ("Anderson") appears by James E.

Ostgard, II, Esq., and the Respondents appear by Noah A. Cashman, Assistant

Minnesota Attorney General.  For reasons which follow, we recommend that the Petition be denied.

## II. <u>Factual and Procedural Background</u>

The Petitioner is currently confined for treatment, and for public protection, with the Minnesota Sex Offender Program ("MSOP"), in Moose Lake, Minnesota, pursuant to a civil commitment.  The Petitioner was civilly committed, as a Sexual Psychopathic Personality ("SPP"), and as a Sexually Dangerous Person ("SDP"), in accordance with Minnesota Statutes Section 253B.02, Subdivisions 18b, and 18c, on August 23, 2006.  See, <u>Respondent's Appendix ("RA")</u>, <u>Docket No. 9</u>, at 86.  On August 30, 2007, the Trial Court directed that the Petitioner be indeterminately committed.[1]  <u>Id.</u> at 244-45.  The District Court's decision was affirmed by the Minnesota Court of Appeals.  See, <u>In re Civil Commitment of Anderson</u>, 2007 WL 824019 at *1-3 (Minn. App., March 20, 2007), review denied (Minn., May 30, 2007); <u>In the Matter of the Civil Commitment of: Byron Kenneth Anderson</u>, No. 21-P5-05-

---

[1]Under Minnesota's Sexual Psychopathic Personality Statute, after the Trial Court renders its initial decision to commit an individual as a SPP, the individual returns to Court, within ninety (90) days, for a review Hearing.  At that time, if the person continues to meet the criteria for commitment, the commitment is made in-determinate.  <u>Minnesota Statutes Section 253B.18, Subdivisions 1 and 2</u>; <u>Minnesota Statutes Section 253B.185</u>.

000375, A07-2054 (Minn.App., February 19, 2008), rev. denied (Minn., April 29, 2008), attached, <u>RA</u>, at 275-77 and 282. Previously, in 2002, Stearns County had filed a Petition for Commitment of Anderson, which was dismissed without prejudice, upon the recommendations of Dr. Paul Reitman and Dr. Thomas Alberg. See, <u>RA</u>, at 29, 158, and 231.

The facts which underlie Anderson's current Habeas Petition were recently summarized by the Minnesota Court of Appeals, as follows:

> In 2002, Stearns County filed a petition seeking to commit [Anderson] as an SPP and an SDP. Both examiners in that case, Dr. Paul Reitman and Dr. Thomas Alberg, opined against civil commitment of [Anderson], and the petition was dismissed. [Anderson] was referred to a treatment program at Alpha Human Services as a condition of his supervised release.
>
> By the time the 2002 petition was filed, [Anderson] had been involved with three sexual offenses and convicted of two. The first offense happened in early 1990, when E.A.W. was attacked as she was on her morning jog in Northfield. She escaped after [Anderson] chased her, pulled her to the ground, and attempted to remove her pants. [Anderson] was charged with third-degree attempted criminal sexual conduct, but the charge was dismissed as part of a plea agreement in the later P.A.S. case.
>
> Later in 1990, [Anderson] raped 60-year-old J.M.J. at her home in Glenwood. [Anderson] pleaded guilty to first-degree criminal sexual conduct. In 2002, [Anderson] told

a version of this offense which was later determined to be false.

In 1992, [Anderson] sexually assaulted 21-year-old P.A.S. [Anderson] pleaded guilty to one count of first-degree criminal sexual conduct. At the time of the 2002 commitment petition, [Anderson] denied having any other victims.

[Anderson] also has a history of engaging in window peeping. He denied a 1987 report that identified him as the person who had tapped on an apartment window and then made provocative comments to the apartment's occupant. In 1988, he pleaded guilty to a misdemeanor interference-with-privacy charge after an Alexandria resident reported seeing [Anderson] peek into windows. In 1991, [Anderson] was accused of window peeping by M.H., but he was later convicted of attempted theft on the same date. In 2002, [Anderson] claimed that he was looking in windows to steal things, and not for purposes of sexual gratification.

At the time of the 2002 petition, there were also allegations that [Anderson] had publicly distributed lewd photographs of himself. Although he denied these reports, his estranged wife identified the photographs as being of [Anderson].

In late 2003, [Anderson] completed the inpatient portion of his treatment at Alpha House and moved to a house in north Minneapolis to complete the outpatient portion of the program. At that time, [Anderson] was employed and making progress in the program. But in early 2004, [Anderson] expressed boredom with his job and stress about financial difficulties.

On April 7, 2004, H.B. called the Bloomington Police Department to report that a man was looking in her window. The police stopped [Anderson] in the area a few minutes later. He told numerous versions of what he was doing in the neighborhood and furnished some information that proved to be false. The Bloomington city attorney charged [Anderson] with misdemeanor surreptitious intrusion, in violation of Minn.Stat. § 609.746, subd. 1 (2002), but the charges were eventually dismissed.

The Department of Corrections issued a warrant for [Anderson]'s arrest, alleging that [Anderson] had violated the terms and conditions of his release by failing to successfully complete sex offender treatment, by failing to follow his agent's instructions, by becoming involved in criminal activities, and by engaging in assaultive, abusive, or violent behavior. The department's Hearings and Release Unit found that [Anderson] had failed to complete sex offender treatment and failed to follow his agent's directions. The unit dismissed the violation because of the dismissal of criminal charges. But [Anderson]'s stay at Alpha House was terminated and his conditional release was revoked.

In 2005, Hennepin County filed a petition seeking to commit [Anderson] as an SPP and SDP. The matter was eventually transferred to Douglas County. When the petition was filed, [Anderson] was in prison because his conditional release had been revoked.

In addition to the offenses that were considered during [Anderson]'s 2002 evaluation for civil commitment, [Anderson] admitted to several additional, previously undisclosed instances of sexual misconduct during the 2005 commitment proceedings. [Anderson] admitted sexually

assaulting his wife's aunt in 1989, while she was sleeping. [Anderson] admitted that when he was 25, he sexually grabbed his sister-in-law. He also admitted to sexually assaulting a woman in Douglas County in 1987, stating facts matching an assault report at the time by K.M.W. and leading the district court to conclude that [Anderson] had committed the assault against K.M.W. [Anderson] admitted to lying about this incident in 2002 because he feared commitment. [Anderson] also admitted that he had previously lied about the facts surrounding the rape of J.M.J. and an attempted sexual assault of M.H. He further admitted that he had peeped on M.H. and her boyfriend on previous occasions.

To support its 2005 petition, the state relied on evidence of [Anderson]'s sexual conduct and the evaluations and reports of court-appointed medical examiner, Dr. Harry Hoberman. [Anderson] waived his right to be interviewed by Dr. Hoberman and to have a second court-appointed examiner. [Anderson] retained Drs. Alberg and Reitman. Dr. Hoberman testified that, based on his review of the records and the testimony at the commitment trial, [Anderson] met the criteria for commitment as both a sexually dangerous person and a sexual psychopathic personality. Drs. Alberg and Reitman also agreed that [Anderson] should be committed as a sexually dangerous person. Dr. Alberg testified that he was unsure whether [Anderson] meets the "utter lack of control" element necessary for a sexual psychopathic personality commitment, and that he would leave this determination to the district court. But Dr. Reitman opined that [Anderson] meets the criteria for a sexual psychopathic personality commitment.

> On August 23, 2006, the district court filed an order
> committing [Anderson] to the Minnesota Sex Offender
> Program as a sexual psychopathic personality and a
> sexually dangerous person.

In re Civil Commitment of Anderson, supra at *1-3.

On Anderson's appeal of the provisional decision of August 23, 2006, the Minnesota

Court of Appeals affirmed the conclusion of the Minnesota District Court, that clear

and convincing evidence demonstrated that Anderson "is highly likely to engage in

acts of harmful sexual conduct in the future." Id. at *5.

The Court also held that the Petition for Commitment, which was dismissed in

2002, did not preclude the Petition for Commitment in 2005, on the basis of collateral

estoppel, id, and that the dismissal of the H.B. window incident was not preclusive,

nor was the Court's finding with respect to E.A.W. precluded by E.A.W.'s

identification of Anderson in 1993. Id. at *6. Further, the Court concluded that the

District Court did not err, in admitting references to a polygraph examination of

Anderson, and police reports related to the rape of K.M.W., under Minnesota law, id.,

which was also the basis for Anderson's objection to the evidence. See, RA, at 169-

72. Finally, the Court addressed Anderson's constitutional claim, that Anderson's

civil commitment violated due process and double jeopardy, "because of the

Minnesota Sex Offender Program's 'inability or unwillingness to allow committed sex

offenders graduation and release.'" <u>In re Civil Commitment of Anderson</u>, supra at *7. The Court rejected both claims. <u>Id.</u> at *7-8. Anderson appealed to the Minnesota Supreme Court, arguing that the conclusions of the Appeals Court were not supported by clear and convincing evidence, and that the commitment proceeding was barred by "collateral estoppel, double jeopardy and due process." <u>RA</u>, at 234. The Minnesota Supreme Court denied review on May 30, 2007. <u>Id.</u> at 239.

On August 30, 2007, after receiving the Judgment for indeterminate commitment, following the report of the MSOP staff, Anderson again appealed the District Court's determination, that he met the criteria for SDP and SPP, arguing, as he had before, that collateral estoppel and res judicata barred the second Petition for Commitment, and that there was no clear and convincing evidence of SDP and SPP. See, <u>RA</u>, at 249, 252-56. On February 18, 2008, the Court of Appeals, citing the doctrine of "the law of the case," declined to re-examine the collateral estoppel issues with respect to H.B. and E.A.W., and affirmed the District Court's finding that Anderson had assaulted K.M.W. <u>Id.</u> at 276-77. Having determined that the factual basis was identical to that of Anderson's earlier appeal, the Court declined to re-evaluate the determinations of SDP and SPP. <u>Id.</u> at 277. Anderson appealed, asking the Minnesota Supreme Court to review the case in order to clarify and narrow the

doctrine of collateral estoppel, as applied in the civil commitment context, id. at 281, and the Minnesota Supreme Court denied review on April 29, 2008. Id., at 282.

Accordingly, on April 30, 2009, Anderson filed a Petition for Habeas Corpus, which he amended on June 16, 2009, under Title 28 U.S.C. §2254, and in which he asserts three (3) grounds for relief.[2] See, Docket Nos. 1 and 5. First, Anderson contends that his due process rights were violated by the conduct of the second Hearing, which he terms a "serial proceeding;" second, Anderson argues that the State Court relied upon incompetent evidence in its evaluation of whether he met the statutory grounds for SDP and SPP, in violation of his procedural and substantive due process rights, as well as his right to an equal protection of law; and third, Anderson contends that, without the allegedly incompetent evidence, there was no clear and convincing evidence that he satisfied the statutory criteria for SDP and SPP. See, Amended Petition, Docket No. 5, supra.

---

[2]Anderson also cites to Title 28 U.S.C. §2241 as providing jurisdiction for his Habeas Corpus Petition. See, Amended Petition, Docket No. 5, at p. 1 of 13. However, Section 2241 provides relief for **Federal** prisoners who challenge the duration of their sentences. See, Title 28 U.S.C. §2241(c). As Anderson is currently housed in the MSOP, in Moose Lake, Minnesota, pursuant to a State Court Judgment of Commitment, his Habeas Corpus Petition is not properly based in Section 2241, and we recommend a dismissal of the Petition to the extent it is so based.

### III. Discussion

A.   Standard of Review.  "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Title 28 U.S.C. §2254(a).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  As a result, before a Writ may issue, a petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty.  Id.; see also, Lupien v. Clarke, 403 F.3d 615, 619 (8th Cir. 2005); Newton v. Kemna, 354 F.3d 776, 782 (8th Cir. 2004), cert. denied, 543 U.S. 979 (2004); Robinson v. Leapley, 26 F.3d 826, 829 (8th Cir. 1994).

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, where the underlying claims were adjudicated in State Court.  See, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"); see also, Lockyer v. Andrade, 538 U.S. 63, 70 (2003) ("AEDPA circumscribes a federal habeas court's review of a state court decision."). A Federal Court's authority to vitiate State Court decisions, by the granting of a Writ

of Habeas Corpus, is now limited to the narrow class of claims which have been fully

exhausted in the State Courts, and which involve an adjudication that either:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Title 28 U.S.C. §2254(d).

The Supreme Court has determined that the "contrary to," and "unreasonable

application" clauses of Section 2254(d)(1), present two (2) separate grounds on which

a Federal Court may grant Habeas relief to claims adjudicated in the State Courts.

See, Williams v. Taylor, 529 U.S. 362 (2000). The Court has explained, as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case.

Id. at 412-13.

The Court further explained that a consideration of a State Court's decision, under the "unreasonable application" clause, requires a Federal Court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409; see also, Underdahl v. Carlson, 462 F.3d 796, 798 (8th Cir. 2006), cert. denied 549 U.S. 1345 (2007); Davis v. Norris, 423 F.3d 868, 874-75 (8th Cir. 2005); LaFrank v. Rowley, 340 F.3d 685, 689 (8th Cir. 2003), cert. denied, 541 U.S. 950 (2004).

Under this heightened standard of review, a Federal Court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." Id. at 411; see also, Davis v. Norris, supra at 875; Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001)(examining the impact of Williams on Habeas proceedings), cert. denied, 534 U.S. 1138 (2002); Newman v. Hopkins, 247 F.3d 848, 850-51 (8th Cir. 2001), cert. denied, 536 U.S. 915 (2002); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), cert. denied, 532 U.S. 1024 (2001).

As a consequence, Williams affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary to" clause was to be used in

cases addressing pure questions of law and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations. See, e.g., Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for Miranda purposes is a question of law subject to the first prong of Section 2254(d), when the relevant facts are undisputed). Therefore, when a petitioner argues that the State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was unreasonable. "'[O]bjectively unreasonable' does not mean 'clear error,' because '[t]hese two standards * * * are not the same,'" and "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." LaFrank v. Rowley, supra at 689, quoting Lockyer v. Andrade, supra at 75.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations rendered by a State Tribunal, which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary. See, Guinn v. Kemna, 489 F.3d 351, 359 (8th Cir. 2007), cert. denied, --- U.S. ----, 128 S.Ct. 1716 (2008); Lupien v. Clarke, supra at 618; Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005). Despite this presumption, Section 2254(d)(2) authorizes the

issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996)("[W]e presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997). Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'" Kinder v. Bowersox, supra at 538, citing Title 28 U.S.C. §2254(e)(1).

B.   Legal Analysis.   We first address the Respondents' contention, that Anderson has failed to exhaust his State Court remedies, with respect to his two (2) constitutional claims.

1.   Exhaustion and Procedural Default.

a.   Standard of Review.   It is well-established that a Federal Court will not entertain a Petition for a Writ of Habeas Corpus on behalf of a person in State custody unless the petitioner has first exhausted all available State Court remedies. See, Title 28 U.S.C. §2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982); see also, Armstrong v. State of Iowa,

418 F.3d 924, 925-26 (8th Cir. 2005), cert. denied, 546 U.S. 1179 (2006)("Federal

habeas relief is available to a petitioner after he 'has exhausted the remedies available

in the courts of the State.'"), quoting Title 18 U.S.C. §2254(b)(1)(A).  The exhaustion

of State remedies requirement is based on principles of comity and federalism, as its

purpose is to ensure that State Courts are given the first opportunity to correct alleged

Federal constitutional errors raised by State prisoners.  See, O'Sullivan v. Boerckel,

supra at 844; Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Rose v. Lundy, supra

at 518-19; Curtiss v. Mount Pleasant Correctional Facility, 338 F.3d 851, 855 (8th Cir.

2003), cert. denied, 540 U.S. 1060 (2003)("The exhaustion requirement serves

AEDPA's goal of promoting 'comity, finality, and federalism,' by giving state courts

'the first opportunity to review [the] claim,' and to 'correct' any 'constitutional

violation in the first instance.'"), quoting Carey v. Saffold, 536 U.S. 214, 220 (2002).

In order to exhaust his State Court remedies, a petitioner must fairly present his

constitutional claims to the highest available State Court before seeking relief in

Federal Court.  See, O'Sullivan v. Boerckel, supra at 844; Duncan v. Henry, supra at

365-66; see also, Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001); McCall v.

Benson, 114 F.3d 754, 757 (8th Cir. 1997)("[B]efore we may reach the merits of a

habeas petition, we must first determine whether the petitioner has fairly presented his

federal constitutional claims to the state court."). The exhaustion of State remedies requires more than the fact that the Federal Habeas applicant has been through the State Courts. See, <u>Picard v. Connor</u>, 404 U.S. 270, 275-76 (1971).

To serve the purposes of exhaustion, the State Courts must have the first opportunity to hear the claim, which is sought to be vindicated in a Federal Habeas proceeding. <u>Id.</u> The State Courts have an opportunity to hear a claim, when the claim has been fairly presented, by reference to a specific Federal constitutional right, a Federal case, or a State case, which raises a pertinent Federal constitutional issue. See, <u>Cox v. Burger</u>, 398 F.3d 1025, 1031 (8th Cir. 2005), cert. denied, 546 U.S. 844 (2005), quoting <u>Barrett v. Acevedo</u>, 169 F.3d 1155, 1161-62 (8th Cir. 1999), cert. denied, 528 U.S. 846 (1999); <u>Abdullah v. Groose</u>, 75 F.3d 408, 411 (8th Cir. 1996), cert. denied, 517 U.S. 1215 (1996). Claims are exhausted only when the same factual underpinnings, and legal theories, were first properly raised in the State Courts. <u>Id</u> "Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." <u>Id.</u>; see also, <u>Abdullah v. Groose</u>, supra at 412, citing <u>Duncan v. Henry</u>, supra at 366.

Under Minnesota law, "[o]nce a defendant has had a direct appeal, 'all matters raised therein, and all claims known but not raised, will not be considered upon a

subsequent petition for post-conviction relief." <u>Zenanko v. State</u>, 587 N.W.2d 642, 645 (Minn. 1998), quoting <u>State v. Knaffla</u>, 243 N.W.2d 737, 741 (Minn. 1976). If the petitioner has failed to exhaust his State Court remedies, and if the Court to which he should have presented his claim would now find it procedurally barred, the claim is procedurally defaulted. See, <u>Sloan v. Delo</u>, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996), citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991). In addition, if a petitioner has attempted to raise a claim in State Court, but the State Court determines that the petitioner has defaulted the claim under a State procedural rule, Federal Courts will not, as a general proposition, consider the claim on Habeas review. See, <u>Coleman v. Thompson</u>, supra at 750; <u>Sloan v. Delo</u>, supra at 1378.

Although the State Court procedural bar is "nearly absolute," a petitioner can avoid the bar if he "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law," or shows his actual innocence. <u>Reagan v. Norris</u>, 279 F.3d 651, 656 (8th Cir. 2002), quoting <u>Coleman v. Thompson</u>, supra at 750. If a petitioner cannot provide cause and prejudice for his default, in the absence of a claim of actual innocence, a Federal District Court can "properly dismiss[] [the

petitioner's] federal claims **with** prejudice." Armstrong v. State of Iowa, supra at 927 [emphasis in original].

Here, Anderson raises two (2) constitutional claims: that the "serial prosecution" of the Petition for Commitment in State Court violated his due process rights; and that the State Court relied upon incompetent evidence, in violation of his substantive and procedural due process rights, as well as his right to the equal protection of the laws. These two (2) claims are closely related, as the "serial prosecution" claim is based upon Anderson's assertion that the 2005 Petition concerned the same facts as the dismissed 2002 Petition, and that the showings as to any new conduct were based on incompetent evidence. In addition, Anderson asserts that the experts' opinions, in 2005, were without a valid scientific basis.[3]

---

[3]In practical effect, Anderson is arguing that, in determining that the second Hearing did not violate Anderson's right to be free from Double Jeopardy, the Minnesota Courts misapplied the holding of In re McPherson, 476 N.W.2d 520 (Minn.App. 1991). There, the Minnesota Court of Appeals held that, where circumstances have changed, a subsequent Petition for Commitment does not implicate Double Jeopardy. Id. at 522. Anderson's argument with respect to the competence of the evidence of his offenses against H.B. and K.M.W., and E.A.H., and the more developed picture of past offenses, boils down to an argument that the circumstances had not sufficiently changed to justify a second Petition for Commitment, pursuant to In re McPherson. See, Amended Petition, supra at p. 7 of 13 ("In sum, there was no genuine change in circumstances, no discovery of material new evidence, which justified a 'new' commitment process in 2005."). However, "[a] (continued...)

While Anderson argued in his State Court appeals that the evidence of the assault on E.A.H., and the window-peeping of H.B., including the victims' testimony identifying Anderson, was precluded by collateral estoppel, that the evidence related to the polygraph examination was improper under State law, that the police report regarding the rape of K.M.W. was not relevant, and that the multiple commitment Petitions constituted unconstitutional Double Jeopardy, he did not argue that the evidence used against him, or the fact of the second Petition, violated his Federal constitutional right to due process, and he never raised an objection to the scientific validity of the expert opinion testimony of Drs. Reitman and Alberg, whom he retained to defend against the Petition for Commitment.

In fact, the only Federal constitutional claim that Anderson raised in State Court, apart from Double Jeopardy, was that his commitment to the Moose Lake Facility was in violation of his due process rights, because no patient had ever graduated from MSOP at Moose Lake, since its inception in 1991 -- a claim which he

_____

[3](...continued)
federal court may not re-examine a state court's interpretation and application of state law."  Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994), citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  To the extent that Anderson attempts to challenge the Minnesota Courts' application of In re McPherson to his case, that challenge is improperly brought in his Petition for Habeas Corpus, and we do not consider that claim further.

does not assert here, and which is insufficient to meet the exhaustion requirement for the claims he now seeks to raise here. See, <u>Baldwin v. Reese</u>, 541 U.S. 27, 33 (2004)("The [State Court] petition refers to provisions of the Federal Constitution in respect to **other** claims but not in respect to this one."). Moreover, Anderson never mentioned equal protection, before his vague reference to it in his Petition here -- and he has not argued, here, how equal protection principles could apply to his allegations.

We find Anderson's State Court briefs and arguments insufficient to properly apprise the State Courts of his now-raised Federal constitutional claims, and therefore, the constitutional claims he raises here are procedurally defaulted. See, <u>Duncan v. Henry</u>, supra at 366 ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in Federal Court, but in state court."); see also, <u>Jones v. Jerrison</u>, 20 F.3d. 849, 854 (8th Cir. 1994)("The federal legal theory or theories must plainly appear on the face of the petitioner's state-court briefs."); <u>Cox v. Burger</u>, supra at 1031 ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement."), quoting <u>Barrett v. Acevedo</u>, supra at 1162. Since the State Courts have not had an opportunity to correct the alleged constitutional errors with respect to the referenced claims, we

recommend denial of Grounds One and Two of the Petition. See, <u>O'Sullivan v. Boerckel</u>, supra at 844.

Having concluded that Anderson's constitutional claims have been defaulted, we proceed to consider whether he has demonstrated cause and prejudice, or that a fundamental miscarriage of justice would occur, if those claims were not considered.

2.      <u>Cause and Prejudice, or a Fundamental Miscarriage of Justice</u>.

As noted, a claim that has been procedurally defaulted in the State Courts will not be entertained in a Federal Habeas proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default or, in the alternative, that there would be a "fundamental miscarriage of justice" if the Federal Court declined to consider that claim. See, <u>Coleman v. Thompson</u>, supra at 750. "It is well-established that federal courts will not address procedurally defaulted claims on the merits unless a petitioner can show either cause and prejudice to excuse the default or actual innocence." <u>Wickner v. Fabian</u>, 2007 WL 1201621 at *8 (D. Minn., April 20, 2007), quoting <u>Schliemann v. Fabian</u>, 2007 WL 495007 at *3 (D. Minn., February 13, 2007), citing, in turn, <u>Clemons v. Leubbers</u>, 381 F.3d 744, 750 (8th Cir. 2004), cert. denied, 546 U.S. 828 (2004); <u>Reagan v. Norris</u>, supra at 656; <u>Carney v. Fabian</u>, 441 F. Supp. 2d 1014, 1023 (D. Minn. 2006), citing <u>Coleman v. Thompson</u>, supra at 750.

The "fundamental miscarriage of justice" exception is available only upon a "showing, based on **new evidence**, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995)[emphasis added], cert. denied, 516 U.S. 1161 (1996), quoting Schlup v. Delo, 513 U.S. 298, 327 (1995).

Here, Anderson has failed to provide any cause, or prejudice, that would excuse his procedural default, nor has he proffered any new evidence which would demonstrate a fundamental miscarriage of justice in his civil commitment. See, Beaulieu v. Minnesota, 2007 WL 2915077 at *4 n. 4 (D. Minn., October 4, 2007) (noting the "natural extension" of the "fundamental miscarriage of justice" exception would be a showing that a constitutional violation has probably resulted in the petitioner being classified as and SDP or SPP); Jordan v. McMaster, 2009 WL 5743209 at *9 (D. S.C., December 10, 2009)(same). In order to satisfy the "cause" requirement, a petitioner must show that some external impediment prevented him from presenting his claims to the State's highest Court in a timely, and procedurally proper manner. See, Coleman v. Thompson, supra at 753 ("'[C]ause' under the cause and prejudice test is something **external** to the petitioner, something that cannot fairly be attributed to him * * *[;] [f]or example, 'a showing that the factual or legal basis

for a claim was not reasonably available * * * or that some interference by officials made compliance impracticable")[emphasis in original], quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  Anderson has not identified any "external cause" that could excuse his failure to present any of his defaulted claims to the Minnesota Supreme Court.[4]  Accordingly, we recommend the denial of Anderson's Habeas Corpus Petition, on all three (3) grounds, as defaulted.

Even if we were to reach the merits of Anderson's Federal due process claims, we would recommend dismissal.  In the first instance, with respect to the claimed "serial prosecutions," Anderson ignores the fact that the first Petition for Commitment, in 2002, was dismissed **without prejudice** -- meaning, of course, that the Petition could be lawfully raised again, and that the 2002 dismissal was entitled to no preclusive effect.  Anderson has cited to no legal authority which demonstrates

_____

[4]Since Anderson has plainly failed to satisfy the cause requirement, it is unnecessary to consider the prejudice component.  See, <u>Cagle v. Norris</u>, 474 F.3d 1090, 1099 (8th Cir. 2007)("If a prisoner fails to demonstrate cause, the court need not address prejudice."), citing <u>Mathenia v. Delo</u>, 99 F.3d 1476, 1481 (8th Cir. 1996), cert. denied, 521 U.S. 1123 (1997); <u>Ashker v. Class</u>, 152 F.3d 863, 871 (8th Cir. 1998) (when a Habeas petitioner "has not shown adequate cause to overcome the procedural bar * * * we need not consider the issue of actual prejudice"); <u>Sweet v. Delo</u>, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998)(same).  Nevertheless, we find no reason to believe that Anderson could satisfy the prejudice requirement, so as to excuse his defaulted claims.

that the subsequent Hearing, in 2005, was held in contravention of his due process rights -- in fact, Anderson's Petition is utterly empty of a citation to legal authority, on any point.  An independent review of the relevant case law reveals no case where the Supreme Court has found an absence of due process where a claim, which had been dismissed without prejudice, is subsequently raised at a later date, and accordingly, Anderson has not shown that the Minnesota Courts "arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or * * * decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  Williams v. Taylor, supra at 413.

Furthermore, to the extent that this "due process" claim is really an argument that the subsequent prosecution constituted a Double Jeopardy, the argument is plainly meritless.  The Double Jeopardy Clause "assures three basic protections -- it protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." Turner v. Johnson, 46 F. Supp.2d 655, 666 (S.D. Tex. 1999), citing United States v. Ursery, 518 U.S. 267, 273 (1996); Witte v. United States, 515 U.S. 389, 395-96 (1995).  However, the Double Jeopardy Clause "protect[s] only against the imposition

of multiple **criminal** punishments for the same offense."  Hudson v. United States, 522 U.S. 93, 99 (1997)[emphasis in original].

The Supreme Court has held that a similar statutory scheme was civil, and nonpunitive, and therefore, did not implicate Double Jeopardy, see, Kansas v. Hendricks, 521 U.S. 346, 361-70 (1997), and we find nothing in Anderson's arguments, in the Record, or in our independent research, which would demonstrate that the Hearing related to the second Petition for commitment was held contrary to any Supreme Court decision.  Accordingly, even if Anderson had not procedurally defaulted on this constitutional argument, we would recommend denial of Ground One of the Petition, which is based upon the claimed "serial prosecution."

With respect to Anderson's argument that the State Court relied upon incompetent evidence in its decision, in violation of his due process rights, he has again cited no legal authority to demonstrate that the admission of the testimony of expert psychologists, who have based their opinions on tests which are by their very nature inexact, see, Ake v. Oklahoma, 470 U.S. 68, 81 (1985)(psychiatry is not "an exact science"), is a violation of the due process rights of a respondent to a Civil Commitment Petition -- indeed, having expert psychological witnesses submit their conclusions to a neutral factfinder, who makes findings based upon clear and

convincing evidence,[5] is exactly in line with the Supreme Court's holdings. See, e.g., Addington v. Texas, 441 U.S. 418, 433 (1979)(civil commitment for mental illness must satisfy due process, with a Hearing and an evidentiary burden of at least clear and convincing evidence); see also, Minnesota Statutes §253B.185 (the provisions for civil commitment as a result of dangerous mental illness apply to SDP and SPP civil commitments); Minnesota Statutes §253B.07, subdivision 3 (requiring the Court to appoint a psychiatric or psychological examiner to advise the Court, and to appoint a second examiner of the respondent's choosing upon request).

Moreover, "'federal habeas corpus relief does not lie for errors of state law' * * * [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, supra at 67-68 (citations omitted); Lannert v. Jones, 321 F.3d 747, 752 n.3 (8th Cir. 2003), cert. denied, 540 U.S. 917 (2003). Generally, a State Court's evidentiary rulings do not implicate Federal constitutional rights such as would give rise to a Federal Habeas claim. See, Sera v. Norris, 400 F.3d 538, 547 n. 8 (8th Cir. 2005), cert. denied, 546 U.S. 915 (2005), citing Weston v. Dormire, 272 F.3d 1109, 1113 (8th Cir. 2001); see also,

---

[5]We later address Anderson's factual argument, that the State Courts' findings of SDP and SPP were not supported by clear and convincing evidence.

Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000). Since questions concerning the admissibility of evidence are matters of State law, they are reviewable in Federal Habeas proceedings "only when the alleged error infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." Manning-El v. Wyrick, 738 F.2d 321, 322 (8th Cir. 1984), cert. denied, 469 U.S. 919 (1984), citing Wallace v. Lockhart, 701 F.2d 719, 724 (8th Cir. 1983), cert. denied, 464 U.S. 934 (1983); see also, Davidson v. Bowersox, 288 F.3d 1076, 1078-79 (8th Cir. 2002), cert. denied, 537 U.S. 925 (2002).

Here, Anderson's evidentiary claim is simply an improper attempt to re-litigate his Hearing. See, e.g., McFarland v. Scott, 512 U.S. 849, 859 (1994)(holding that a criminal Trial is the "main event," and that the Habeas Writ should not be used to "re-litigate state trials"). We understand Anderson to believe that the inclusion of what he considers to be incompetent evidence prejudiced him unfairly. However, we cannot say that the decision of the Minnesota Court of Appeals, on the evidentiary issues which were presented to it, was "objectively unreasonable" in light of the state of the law. As a result, we conclude that the Petitioner's evidentiary complaints are precisely the type of contentions which the Supreme Court has emphasized as being inappropriate bases for Federal Habeas relief. See, Estelle v. McGuire, supra at 67-68.

Consequently, even if Anderson had not procedurally defaulted his due process claim, based upon the admission of the challenged evidence at his Hearing, by failing to argue that claim in the State Courts, we would recommend that the Petition be dismissed as to Ground Two.

                3.        <u>The State Courts' Factual Findings</u>.

        Having disposed of Anderson's constitutional claims, we turn to consider his claim that the Minnesota District Court, and the Minnesota Court of Appeals, made an unreasonable determination of facts, when they found that he met the statutory criteria for SDP and SPP.  As noted, to obtain Habeas relief for an unreasonable determination of the facts, Anderson must rebut the factual findings of the State Court by producing clear and convincing evidence to the contrary.  See, <u>Title 28 U.S.C. §2254(e)(1)</u>; <u>Guinn v. Kemna</u>, supra at 359; <u>Lupien v. Clarke</u>, supra at 618; <u>Green v. Norris</u>, supra at 1029.  Here, Anderson rests entirely upon his argument that, without the evidence which he has argued was incompetent, there was not clear and convincing evidence for the Courts' factual conclusions.  See, <u>Amended Petition</u>, supra at p. 12 of 13 ("There was insufficient **reliable** evidence to support the state courts' conclusion that the state statutory grounds for commitment as an SPP or SDP were met.")[emphasis added].

Anderson argues that, when the allegedly incompetent evidence is removed from the equation, the evidence demonstrates that he was doing well in his treatment at the Alpha House, and that his deceptions, in 2002, were not significantly different from what would be expected from any other sex offender, and therefore, would not justify any reconsideration of his scores on the exams. We find that Anderson's argument misconstrues the appropriate analysis, by asking that the Habeas Court exclude evidence which was in front of the Trial Court, and further, we find that the Trial Court's factual findings are not unreasonable.

First, while Anderson makes great hay of the "re-scoring" of the 2002 exams, our review of the Record reveals that Dr. Reitman did not, in fact, merely re-score old examinations to come to his conclusions, but rather, the doctor had Anderson complete a new MSI examination, had a new interview with Anderson, and adjusted his actuarial assessments based upon that new information. See, RA, at 89 and 94. Further, Dr. Hoberman was appointed in 2005, and completed his review of Anderson's medical record at that time, and the reason that Dr. Hoberman did not complete his own interview of Anderson is because Anderson refused to meet with him. Id. at 57. Both Drs. Reitman and Dr. Hoberman concluded that Anderson met

the criteria for SDP and SPP, and Dr. Alberg concluded that Anderson met the criteria for SDP, but was not certain whether he also met the criteria for SPP.

The experts testified extensively as to the reasoning which underlied their conclusions. For example, Dr. Reitman's testimony, by way of his deposition, reveals that, in 2002, Dr. Reitman believed that Anderson would be amenable to treatment, and that the program at Alpha House would be the best option. Id. at 94-5. However, when Dr. Reitman reviewed Anderson's new MSI results, it became apparent that Anderson had not improved in the way that Dr. Reitman would have expected, as to a person who had undergone intense treatment at Alpha House. Id. at 91. Moreover, Dr. Reitman was aware that Alpha House would not allow Anderson to return, because he had failed his most recent polygraph -- which meant that Alpha House was no longer an option. Id. at 90. Those facts, together with Dr. Reitman's new found realization of the extent of Anderson's deceptions, and manipulations, in 2002, led Dr. Reitman to conclude that Anderson demonstrated symptoms and pathologies which satisfied the SDP and SPP criteria, and which required extensive treatment, at a secure facility, and that, accordingly, MSOP was the least restrictive way to meet Anderson's needs and to protect the public.

Dr. Hoberman testified to the same effect, as did Dr. Alberg, with the exception of his conclusion that Anderson did not meet all of the statutory criteria for SPP. In sum, all three (3) expert witnesses agreed, and testified in detail, that Anderson met each of the criteria for SDP, and two (2) of the three (3) concluded the same with respect to SPP. Further, all three (3) diagnosed Anderson with Paraphilia NOS, among other mental illnesses. Id. at 66, 67, and 68. The District Court found the expert opinion testimony credible and, considering those expert opinions, together with Anderson's own testimony and previous admissions with respect to his prior conduct, his lack of credibility as to H.B., concluded that Anderson met the statutory criteria for SDP and SPP. We find that the Court's conclusion was entirely reasonable.

Anderson also argues that the Minnesota Courts erred in concluding that he had window-peeped on H.B. in 2004, and raped K.M.W. in 1987. As to both of those factual determinations, we find nothing unreasonable in the Courts' conclusions. In his Trial testimony, Anderson admitted that he had raped a third woman, before J.M.J., who was raped in 1990, and that the third woman had been an Alexandria Vo-Tech student. We do find the Court's conclusion, that this Alexandria Vo-Tech student was K.M.W., to be in any way unreasonable, despite Anderson's later denial

that K.M.W. was his victim, as he had been talking about "another Vo-Tech student" -- particularly where the Court found that Anderson had little credibility, and frequently lied in order to protect himself from any responsibility for his actions.

We also find that the dismissal of the Criminal Complaint against Anderson with respect to H.B. is not clear and convincing evidence which would demonstrate that the Courts' conclusion, that Anderson perpetrated that crime, was unreasonable. The Court went into significant detail with respect to Anderson's frequently changing, and contradictory explanations for his presence in the area of H.B.'s home, on the night in question, as well as H.B.'s identification of Anderson at the Commitment Hearing. See, <u>RA</u>, at 48. Despite the dismissal of the Criminal Complaint, we do not find the conclusion by the Douglas County District Court, on the evidence presented at the Commitment Hearing, that Anderson window-peeped on H.B., in 2004, to be unreasonable.

After a thorough review of the Record and the State Court decisions, we find that the Record contains ample evidence to support the findings of the District Court, and of the Minnesota Court of Appeals, that Anderson met the criteria for SDP and SPP, and further, that Anderson was dangerous to the public, and in need of secure treatment, given his failure to comply with the Alpha House treatment, and his

extended history of harmful sexual conduct.  The findings of the State Courts are entitled to a presumption of correctness, and Anderson has failed to sustain his burden of rebutting those factual determinations with clear and convincing evidence.

Moreover, notwithstanding Anderson's apparent argument that we should examine the Record without the evidence he deems incompetent, when determining the reasonableness of the State Courts' Judgment, the Supreme Court has recently held to the contrary.  See, <u>McDaniel v. Brown</u>, --- U.S. ---- , 130 S.Ct. 665, 672 (2010)(a Habeas Court's review of the sufficiency of the evidence encompasses all evidence admitted at Trial, regardless of whether the evidence was admitted erroneously), citing <u>Lockhart v. Nelson</u>, 488 U.S. 33, 39 (1988); see also, <u>Title 28 U.S.C. §2254(d)(2)</u> (a Writ shall not be granted unless the decision was "based on an unreasonable determination of the facts **in light of the evidence presented in the State court proceeding**.")[emphasis added].  We decline to exclude any evidence in our review of the State Courts' factual determinations, particularly when we find the evidence admissible.  Accordingly, because we find that the State Courts' factual findings were not unreasonable, and were supported by evidence in the Record, we recommend dismissal of Ground Three of the Petition.

In sum, finding no merit in any of Anderson's claims, we recommend that his Petition for Habeas relief be dismissed with prejudice.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be dismissed with prejudice.


Dated:  March 16, 2010                                    *s/Raymond L. Erickson*
                                                          Raymond L. Erickson
                                                          CHIEF U.S. MAGISTRATE JUDGE


**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 30, 2010,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 30, 2010,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.